**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Mary Quiala, | No. CV-20-01593-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kathleen Quiala challenges the denial of her Application for Disability Insurance Benefits under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant").[1] Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 25, Pl. Br.) and Defendant's Response Brief (Doc. 26, Def. Br.). The Court has reviewed the briefs and Administrative Record. (Doc. 21, AR.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

## I.    BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on December 9, 2016, for a period of disability benefits beginning on September 27, 2013, her alleged onset date.

---

[1] The Court acknowledges that Kilolo Kijakazi is acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), she is an automatically substituted party.

1    (AR. 186-199.) Plaintiff personally appeared and testified at a hearing before ALJ Patricia

2    A. Bucci on November 4, 2019. (AR. at 33-63.) Vocational Expert ("VE") Jeff Beeman,

3    appearing telephonically, also testified. (AR. at 33, 51-59.) ALJ Bucci issued a written

4    decision denying Plaintiff's claim on December 2, 2019. (AR. at 13-30.) The Social

5    Security Appeals Council upheld the ALJ's denial in a letter dated June 17, 2020 (AR. at

6    1-3), and Plaintiff sought judicial review on August 12, 2020. (Doc. 1.)

7           The Court has reviewed the medical evidence in its entirety. The pertinent medical

8    evidence will be discussed in addressing the issues raised by the parties. The ALJ evaluated

9    Plaintiff's disability based on the following severe impairments: compression fractures of

10   the thoracic and lumbar spine, osteoporosis, and lumbar degenerative disc disease. (AR. at

11   16-18.) The ALJ concluded Plaintiff's other medical impairments, including deep veinous

12   thrombosis, a cerebrovascular accident she suffered in July 2016, and osteoarthritis of her

13   right thumb, to be non-severe. (AR. at 16.) The ALJ further concluded Plaintiff's

14   psychiatric impairments, including Adjustment Disorder, are non-severe. (AR. at 16-18.)

15   The ALJ found Plaintiff could perform sedentary work consisting of lifting or carrying ten

16   pounds occasionally and up to ten pounds frequently; standing or walking for four of eight

17   working hours; sitting for "about six hours" with the need to stand and stretch for one-to-

18   two minutes after every hour; and various other postural and environmental limitations.

19   (AR. at 19.) At Plaintiff's hearing, the VE testified an individual with those limitations

20   could perform Plaintiff's past relevant work as a nurse case manager, which the VE

21   described as skilled, sedentary work.[2] (AR. at 53-54.) The ALJ adopted this testimony and

22   concluded Plaintiff could perform her past relevant work through her date last insured,

23   December 31, 2018. (AR. at 24-25.)

24          In her discussion of the medical opinion evidence, the ALJ assigned "partial weight"

25   to the opinion of Plaintiff's treating orthopedist, John Ehteshami, M.D.; "little weight" to

26

27   _____

28   [2] In the Dictionary of Occupational Titles ("DOT"), the job is described as "nurse consultant." DICOT, 075.127-014, Nurse, Consultant, 1991 WL 646741. The VE acknowledged this at the hearing. (AR. at 53.)

1    Plaintiff's treating internist, Gerald Harris, D.O.; and "partial weight" to consultative,
2    examining neurologist, Gregory Hunter, M.D. (AR. at 22-24.) The ALJ assigned
3    "substantial weight" to the opinions of the state agency medical consultants who reviewed
4    Plaintiff's medical records and assessed her functional limitations at the initial and
5    reconsideration levels of review (AR. at 78-81, 94-97), but "giving greatest weight to the
6    claimant's subjective statements," the ALJ adopted even greater restrictions with respect
7    to Plaintiff's ability to stand, walk, sit without stretching, kneel, crawl, and tolerate
8    environmental exposure to vibrations. (AR. at 22-23.)

9    **II.      LEGAL STANDARD**

10           In determining whether to reverse an ALJ's decision, the district court reviews only
11   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,
12   517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability
13   determination only if the determination is not supported by substantial evidence or is based
14   on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).
15   Substantial evidence is relevant evidence that a reasonable person might accept as adequate
16   to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the
17   evidence is susceptible to more than one rational interpretation, one of which supports the
18   ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947,
19   954 (9th Cir. 2002) (citations omitted).

20           To determine whether a claimant is disabled for purposes of the Act, the ALJ
21   follows a five-step process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of
22   proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*
23   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
24   the claimant is presently engaging in substantial gainful activity. 20 C.F.R.
25   § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"
26   medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At
27   step three, the ALJ considers whether the claimant's impairment or combination of
28   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she cannot, she is disabled. *Id.*

## III.   ANALYSIS

Plaintiff presents three issues for this Court's consideration: (1) whether the ALJ erred by failing to "properly evaluate the medical opinion evidence which supported more restrictive sitting limitations"; (2) whether the ALJ erred by failing to include mental limitations in Plaintiff's RFC; and (3) whether the ALJ erred by failing to explicitly consider Plaintiff's work history in her evaluation of Plaintiff's symptom testimony (Pl. Br. at 1).

### A.   The ALJ did not err in weighing the opinion evidence.

Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinions of two treating physicians and a consultative examiner regarding Plaintiff's ability to sit over the course of a workday. (Pl. Br. at 16-22.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reason that are supported by substantial evidence in the record.'" *Id.* The Court will address each physician's opinion in turn.[3]

---

[3] The Court recognizes that new regulations regarding the consideration of medical opinion evidence in disability claims eliminate the deference previously accorded to treating physicians. 20 C.F.R. § 404.1520c(a). Because Plaintiff filed this claim before March 27, 2017 (AR. at 196-99), however, the prior regulatory scheme applies. 20 C.F.R. § 404.1527.

1       **I.      Dr. John Ehteshami.**

2          At the RFC phase, the ALJ assigned "partial weight" to the opinion of Plaintiff's

3   treating orthopedist, Dr. John Ehteshami, who opined in January 2015 that Plaintiff was

4   permanently limited to lifting ten pounds and standing or sitting for only 10-15 minutes

5   before needing to change position.[4] (AR. 22.) The ALJ assigned "substantial weight" to

6   Dr. Ehteshami's opinion regarding weight-lifting restrictions, but only "little weight" to

7   his assigned sitting restrictions. (AR. at 22.) The ALJ reasoned Dr. Ehteshami's conclusion

8   Plaintiff could only sit for 15 minutes at a time was inconsistent with her testimony at the

9   hearing that she could sit for up to an hour before changing position, and inconsistent with

10  the opinion of Plaintiff's treating internist, Dr. Gerald Harris, who opined Plaintiff could

11  sit for an hour at one time. (AR. at 22.) The ALJ also rejected Dr. Ehteshami's opinion

12  Plaintiff could only stand for 15 minutes at one time based on Plaintiff's reported daily

13  activities, which included going to the gym, walking laps around a community track, and

14  mall walking. (AR. at 22.)

15         Plaintiff contends the ALJ erroneously   accepted Dr. Ehteshami's lifting

16  limitations—citing his knowledge of Plaintiff's treatment history and his regular

17  observations—but then rejected the sitting limitations while disregarding those factors. (Pl.

18  Br. at 17.) Plaintiff further contends her medical history of osteoporosis and fractured

19  vertebra—which the ALJ cited in support of adopting Dr. Ehteshami's lifting limitations

20  —also supports the sitting limitations he assigned. (Pl. Br. at 17.) Plaintiff argues the ALJ

21  erred in citing an inconsistency between the opinions of Drs. Ehteshami and Harris because

22  she selectively omitted "Dr. Harris' entire opinion regarding sitting." (Pl. Br. at 17.)

23  Plaintiff explains that Dr. Harris stated she would be unable to sit for prolonged periods,

24  which he defined as greater than one hour, but then stated Plaintiff could only sit for less

25  than one hour in a day, which makes it "clear that Dr. Harris' [*sic*] was opining as to

26

27  _____

28  [4] Dr. Ehteshami also opined Plaintiff could not return to her past work. (AR. at 2098.) The ALJ rejected this opinion (AR. at 24), but Plaintiff does not explicitly challenge this. (Pl. Br. at 16-22.)

1    Plaintiff's ability to sit over the course of an entire workday." (Pl. Br. at 17-18.) Plaintiff

2    states the ALJ had a duty to clarify this opinion, but did not. (Pl. Br. at 18.) Finally, Plaintiff

3    asserted her testimony was not inconsistent with Dr. Ehteshami's because Plaintiff testified

4    she would be able to return to a seated position only minimally after sitting for one hour.

5    (Pl. Br. at 18.) Plaintiff asserts the sitting limitations she reported to medical providers

6    "were made on different visits over a period of time that spanned several years," and that

7    "obviously a person's pain fluctuates in severity," but that Plaintiff consistently reported

8    sitting limitations greater than those assigned by the ALJ. (Pl. Br. at 18 n. 4.)

9         The Court finds the ALJ provided legally sufficient reasons for rejecting aspects of

10   Dr. Ehteshami's opinion. An ALJ need not accept every aspect of a given opinion, *see*

11   *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir.1989), and certain factors which militate

12   in favor of accepting certain restrictions may not militate in favor of accepting others. The

13   ALJ reasonably  considered the discrepancies between Dr. Ehteshami's opinion and

14   Plaintiff's own testimony and Dr. Harris's opinion. *See id.*, at 751–54 (ALJ may reject a

15   treating physician's opinion where it conflicts with other objective evidence, including

16   opinion evidence and claimant's testimony). Plaintiff notes it is reasonable to expect an

17   individual's reported limitations to fluctuate over a period of years, but the Court finds this

18   only bolsters the ALJ's decision to reject Dr. Ehteshami's assigned limits, documented in

19   a treatment record from January 2015—nearly five years before Plaintiff's hearing. (AR.

20   at 2098.)

21        Moreover, at the November 2019 hearing, Plaintiff testified she could sit for about

22   one hour at a time. (AR. at 40.) Plaintiff contends this misrepresents her testimony (Pl. Br.

23   at 18), but the Court is not persuaded. Plaintiff testified that she could sit for an hour at a

24   time, and for a certain period of time beyond that, however minimal (AR. at 40), is  contrary

25   to Dr. Ehteshami's opinion. This blatant contradiction is adequate to reject the sitting

26   limitations he assigned. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

27   601-02 (9th Cir. 1999) (holding conflict between assessed limitations and Plaintiff's

28   reported activities justified rejection of treating psychiatrist's opinion); *Magallanes*, 881

1   F.2d at 751–54; *Benavides v. Astrue*, No. 10-CV-02991-LHK, 2011 WL 4406437, at *4
2   (N.D. Cal. Sept. 21, 2011) ("The ALJ also noted that Drs. Creger and Aachi gave no
3   narrative rationale for their form recommendations, and that the doctors' weight-lifting
4   recommendations are inconsistent with Plaintiff's testimony."); *Myers v. Barnhart*, No. 04-
5   00994, 2006 WL 1663848, at *6 n.7 (C.D. Cal. June 6, 2006) ("[A] treating physician's
6   assessment of a claimant's restrictions may be rejected to the extent it appears to be
7   inconsistent with the level of activity the claimant maintains, or contradicts Plaintiff's
8   testimony.") (citations omitted). The Court finds no error with respect to Dr. Ehteshami's
9   January 2015 opinion.

10      **II.      Dr. Gerald Harris**

11          On October 31, 2019, Plaintiff's treating internist, Dr. Gerald Harris, completed a
12   Summary Impairment Questionnaire indicating Plaintiff suffered from back pain and the
13   "inability to sit/stand for prolonged periods," which he defined as greater than one hour.
14   (AR. at 2126.) Therein he indicated Plaintiff could perform a job in a seated position for
15   less than one hour in an eight-hour day, and while standing or walking for less than one
16   hour in a day. (AR. at 2127.) He indicated Plaintiff could "never/rarely" lift weights of 10-
17   20 pounds, and "never/rarely" carry weights of 5-10 pounds. (AR. at 2127.) He indicated
18   no significant limitations in reaching, handling, or fingering, but then concluded Plaintiff
19   could "never/rarely" use her left arm for reaching overhead[5]; and occasionally use both
20   arms to grasp, turn, and twist objects and use her hands and fingers for fine manipulation.
21   (AR. at 2127.) He indicated these symptoms and limitations would apply as far back as
22   2013. (AR. at 2127.)

23          The ALJ assigned "little weight" to this opinion due to internal inconsistencies she
24   deemed irreconcilable. (AR. at 23.) The ALJ cited Dr. Harris's inconsistent statements
25   regarding Plaintiff's ability to sit and use her hands. (AR. at 23.) The ALJ also cited an
26   indication on the form which suggests Plaintiff, and not the doctor, completed the form.

27   ────────────────

28   [5] The form is somewhat ambiguous, as Dr. Harris indicated Plaintiff could also
     occasionally use her left arm for overhead reaching. (AR. at 2127.)

1    (AR. at 24.)

2          Plaintiff argues Dr. Harris's opinion is not inconsistent, as he specifically opined

3    she could perform work in a seated position for less than one hour in a day. (Pl. Br. at 18.)

4    Plaintiff argues that while her initials appear on the form, it is indisputable that Dr. Harris

5    signed it, thereby endorsing the limitations specified in the form. (Pl. Br. at 19.)

6          An ALJ may reject a treating physician's opinion "premised to a large extent upon

7    the claimant's own accounts of [her] symptoms and limitations" if the Plaintiff's subjective

8    symptom testimony has been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th

9    Cir.1989). As detailed below, the Court finds Plaintiff has not carried her burden of

10   explaining how the ALJ improperly rejected her symptom testimony. Dr. Harris's opinion

11   is also internally inconsistent, which is a relevant factor an ALJ may consider when

12   assessing a treating physician's opinion. *See Morgan*, 169 F.3d at 603.

13         The Court disagrees with Plaintiff that the ALJ had a duty to re-contact Dr. Harris

14   to clarify his opinion under these circumstances. (Pl. Br. at 19.) The ALJ need only take

15   additional steps to clarify inconsistent evidence if she "cannot reach a conclusion"

16   regarding disability. 20 C.F.R. § 404.1520b(b)(2); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th

17   Cir. 2020) (finding the ALJ's duty to recontact examining physician for explanation of

18   vague limitations was not triggered "[g]iven that the ALJ had years of [claimant's] mental

19   health records and multiple opinions from non-examining psychiatrists to inform her

20   decision . . . ."); *Harris v. Colvin*, 584 Fed. Appx. 526, 527 n.1 (9th Cir. 2014)

21   (unpublished) (ALJ not required to contact physician for clarification when the evidence

22   was otherwise sufficient to make a disability determination). Here, it is apparent the ALJ

23   had sufficient information to decide the claim. Importantly, the ALJ also provided other

24   specific, legitimate reasons, supported by substantial evidence, for rejecting Dr. Harris's

25   opinion, including an indication on the form that Plaintiff completed it herself—which

26   Plaintiff does not explicitly deny in the briefs (Pl. Br. at 19)—and Dr. Harris's failure to

27   explain which of Plaintiff's diagnoses contributed to the manipulative limitations

28

1    expressed in the form. (AR. at 23-24.) The Court finds no error with respect to Dr. Harris.[6]

2    ### III.    Dr. Gregory Hunter

3    Finally, on March 23, 2017, neurologist Gregory Hunter, M.D. interviewed and

4    examined Plaintiff on behalf of the State's Disability Determination Services ("DDS").

5    (AR. at 578-84.) In a Medical Source Statement outlining Plaintiff's physical abilities, Dr.

6    Hunter opined Plaintiff could lift or carry weights of up to ten pounds. (AR. at 582-83.)

7    Dr. Hunter opined Plaintiff could stand or walk for six hours and sit for five hours in an

8    eight-hour day. (AR. at 583.)

9    The ALJ gave this opinion "partial weight." (AR. at 23.) The ALJ assigned

10   "substantial weight" to the lifting and carrying limitations Dr. Hunter assigned, as well as

11   the postural limitations, but rejected his conclusion Plaintiff was limited to only five hours

12   of sitting, noting "[t]his assessment appears to be based on the claimant's statements to him

13   during this one-time examination concerning her difficulty sitting for more than 20 minutes

14   at a time." (AR. at 23.) The ALJ contrasted these limits with Plaintiff's testimony, Dr.

15   Harris's assessment, and Plaintiff's ability to perform various daily activities.[7] (AR. at 23.)

16   The Court finds the ALJ did not provide specific, legitimate reasons for rejecting

17   the sitting limitations Dr. Hunter assigned. The sole reason for rejecting Dr. Hunter's

18   conclusion that Plaintiff could sit for five hours was that it "appear[ed] to be based on

19   [Plaintiff's] statements" regarding her sitting limitations (AR. at 23), but Dr. Hunter's

20   report does not support this reasoning. In his report, Dr. Hunter stated, "Based on today's

21   history, examination and the records provided, please refer to the Medical Source

22   Statement . . . that accompanies this dictation." (AR. at 581.) Dr. Hunter reviewed medical

23   records consisting of "diagnosis and treatment of osteoporosis with multiple fractures

---

[6] Although the Court finds no error here, remand is warranted on other grounds. Upon remand, Plaintiff will have the opportunity to seek clarification from Dr. Harris regarding the limitations he assigned.

[7] The ALJ also assigned "little weight" to the reaching limitations Dr. Hunter assigned, because they were inconsistent with his findings during his examination of Plaintiff. (AR. at 23.)

1    noted," and he documented "palpable tenderness in the back overlying the regions of the

2    compression fracture" on examination. (AR. at 579-580.) Dr. Hunter's report suggests his

3    conclusions were based on more than her self-report.

4         Plaintiff urges the Court to consider that the limitations Dr. Hunter assigned are not

5    consistent with sedentary work, and to reject the VE's testimony Plaintiff could perform

6    her past relevant work with these limitations. (Pl. Br. at 19.) Dr. Hunter concluded Plaintiff

7    could sit for five hours and stand or walk for six hours—11 hours combined—in a day.

8    (AR. at 583.) The VE testified that an individual with these limitations (among the others

9    Dr. Hunter assigned) could perform Plaintiff's past relevant work. (AR. at 56.) In response

10   to Plaintiff's attorney, the VE clarified that if Plaintiff could stay in either a seated or

11   standing position for at least 30 minutes, he did not "see any erosion [of job numbers] or

12   any problem." (AR. at 57.) The VE explained Plaintiff could perform the work from a

13   standing position as necessary.[8] (AR. at 57.)

14        Plaintiff cites the regulatory definition of sedentary work (which entails

15   approximately six hours of sitting in an eight-hour workday), 20 C.F.R. § 404.1567(a), and

16   Social Security Ruling 00-4p, which provides, "SSA adjudicators may not rely on evidence

17   provided by a VE . . . if that evidence is based on underlying assumptions or definitions

18   that are inconsistent with our regulatory policies or definitions[,]" including exertional

19   level.[9] SSR 00-4p further provides, by way of example, that "if all available evidence

20   (including VE testimony) establishes that the exertional demands of an occupation meet

21   the regulatory definition of 'medium' work . . . the adjudicator may not rely on VE

22   testimony that the occupation is 'light' work.'" *Id*. Thus, an ALJ may not rely on VE

23   testimony that classifies a job as generally performed at a different exertional level than as

24   ─────────────

25   [8] This is supported by Plaintiff's own account. At the hearing, she testified that during her
26   attempt to return to work with her former employer, a standing desk was provided which
     enabled her to work from a standing position. (AR. at 47.) Plaintiff testified she could not
27   perform the job even with that accommodation. (AR. at 47.)

28   [9] Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational
     Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-
     4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

1    prescribed in the DOT. *See id.*

2         That is not the case here. Vocational experts may give testimony on the nature of a

3    job as it is generally performed in the national economy and how certain limitations could

4    impact available jobs. *See, e.g.*, Titles II & XVI: Past Relevant Work—The Particular Job

5    or the Occupation As Generally Performed, SSR 82-61, 1982 WL 31387 at *2 (S.S.A.

6    1982), ("For those instances where available documentation and vocational resource

7    material are not sufficient to determine how a [claimant's past relevant work] is usually

8    performed, it may be necessary to utilize the services of a vocational specialist or

9    vocational expert."); Titles II & XVI: Capability to Do Other Work—The Medical-

10   Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range

11   of Work or Between Ranges of Work, SSR 83-12, 1983 WL 31253 at *2 (S.S.A. 1983).[10]

12   While Plaintiff's past work requires, at most, six hours of sitting under the DOT, the VE's

13   testimony was reasonable, supported by the Plaintiff's own testimony regarding the ability

14   to stand on the job, and within the scope of the VE's authority and expertise. (AR. at 57.)

15        The Court recognizes the generally accepted proposition that sedentary work entails

16   an ability to sit for six hours.[11] *E.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1052 (9th Cir.

17   2001). Social Security Ruling 83-10 provides, however, that sedentary work only

18   "generally requires" this amount of sitting, and the ability to perform a diminished range

19   of sedentary work does not always necessitate a finding the claimant is disabled. *See* Titles

20   II & XVI: Determining Capability to Do Other Work-Implications of A Residual

---

[10] Although it applies to situations involving the Medical-Vocational rules at step five, SSR 83-12 illustrates the usefulness of VEs in these situations. The Ruling provides that a vocational specialist "should be consulted" in situations involving unusual sitting or standing requirements that do not neatly fit within a defined exertional level. SSR 83-12, 1983 WL 31253, at *4.

[11] Social Security Ruling 83-10 states that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." Titles II & XVI: Determining Capability to Do Other Work—the Med.-Vocational Rules of Appendix 2, SSR 83-10 1983 WL 31251 *5 (S.S.A. 1983).

1   Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9P, 1996 WL
2   374185 at *6-7 (S.S.A. July 2, 1996). A vocational expert is competent to testify to the
3   impact of a given limitation on Plaintiff's ability to perform a job as it is generally
4   performed. The Court finds no error with respect to Dr. Hunter.[12]

5   **IV.   The ALJ's reliance on non-examining physicians and other factors.**

6   Plaintiff contends the ALJ gave "no real or obvious consideration" to each
7   physician's treatment histories with Plaintiff, although the regulations provide the opinions
8   of treating physicians are generally entitled to greater weight. (AR. at 20.) Plaintiff cites
9   federal regulation 20 C.F.R. § 404.1527(c)(2)(ii) for the proposition an ALJ "will give the
10  [treating] source's medical opinion more weight" than a non-treating source when the
11  treating source has "reasonable knowledge" of a claimant's impairments. (Pl. Br. at 20.)
12  Plaintiff asserts that "substantial evidence supports more restrictive sitting limitations," and
13  that it is unclear how the ALJ's reliance upon the non-examining medical consultants does
14  not actually justify more restrictive limitations, such as those assigned by Plaintiff's
15  treating physicians and the examining doctor. (Pl. Br. at 21.)

16  To begin, the ALJ acknowledged a treatment relationship between Plaintiff and Drs.
17  Ehteshami and Harris. (AR. at 22-23.) The existence of a treating relationship, however,
18  does not mean these opinions are automatically entitled to controlling weight. When a
19  treating physician's opinion is not given controlling weight, several other factors are
20  considered, including supportability, consistency, and the physician's specialization. *See*
21  20 C.F.R. § 404.1527(c); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion
22  of any physician, including a treating physician, if that opinion is brief, conclusory, and
23  inadequately supported by clinical findings.") (citations omitted). Generally, "[t]he opinion
24  of a nonexamining physician cannot by itself constitute substantial evidence that justifies
25  the rejection of the opinion of . . . a treating physician." *Lester v. Chater*, 81 F. 3d 821, 831

26
27
28  [12] Although the Court finds no error here, the Court remands this case as explained in
    further detail below. Upon remand, each party will have the opportunity to explore what
    other work might be available given the limitations Dr. Hunter assigned.

1
2
3
4
5
6
7
8
9
10

(9th Cir. 1996). But a non-examining physician's opinion can serve as substantial evidence when it is consistent with other evidence of record. *Thomas*, 278 F.3d at 957. In support of her decision to afford substantial weight to the opinions of the non-examining consultants, the ALJ cited diagnostic testing, examinations showing an intact gait, Plaintiff's reported daily activities, and lifting abilities.[13] (AR. at 23.) Although Plaintiff contends that some of the medical evidence the ALJ cited warranted further restrictions, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citations omitted).  The Court finds the ALJ cited substantial evidence in her decision to rely on the non-examining physicians.

11
12

**B.     The ALJ erred by not adequately explaining her decision to omit mental limitations from Plaintiff's RFC.**

13
14
15
16
17
18
19
20
21
22

At step two of the sequential evaluation process, the ALJ applied the 20 C.F.R. 404.1520a(b) psychiatric review technique   to conclude Plaintiff's mental health impairments are not severe. (AR. at 16-17.) The ALJ assigned Plaintiff mild limitations in three of the four broad functional categories: understanding, remembering, and applying information; interacting with others; and concentration, persistence, and pace. (AR. at 17-18.) The ALJ largely relied on Plaintiff's reported daily activities to support the degree of limitation she assigned. (AR. at 17-18.) The ALJ also assigned "substantial weight" to the opinions of the psychological consultative examiner and the opinions of the non-examining psychological consultants, each of whom, in the ALJ's view, supported the conclusion Plaintiff's mental health disorder was not severe.[14] (AR. at 17.)

23
24
25

[13] Previously the ALJ cited specific treatment notes to support the conclusion that "[Plaintiff's] examinations documented occasional tenderness of the thoracic and lumbar spine but generally showed intact strength, sensation, reflexes, and gait." (AR. at 20.)

26
27
28

[14] In his May 2017 consultative examination, psychologist Robert Mastikian, Psy.D., diagnosed Plaintiff with Alcohol Use Disorder (severe, in full remission), and Adjustment Disorder with depression. (AR. 692.) Dr. Mastikian indicated Plaintiff suffered limitations associated with these conditions, but he did not elaborate on these limitations or even specifically identify them. (AR. at 694-95.) In his RFC assessment, Dr. Mastikian noted, for instance, "no observable problems with immediate, recent or remote memory"; that Plaintiff "presented as a good historian" and "appeared to comprehend all questions with

- 13 -

Plaintiff argues the ALJ erred by failing to account for her mild limitation in concentration, persistence, or pace in her RFC, and that even a mild limitation would impact Plaintiff's ability to perform her skilled past work. (Pl. Br. at 22-23.) Alternatively, Plaintiff suggests the record supports more significant limitations. (Pl. Br. at 23.) Defendant counters that the ALJ's step two findings are supported by substantial evidence, that the ALJ is not required to include limitations from a non-severe mental health impairment in the RFC, and that the ALJ's reliance on Dr. Mastikian's psychological CE does not belie her conclusion Plaintiff's mental impairment is non-severe. (Def. Br. at 12-15).

Federal regulations provide that a finding of "no limitation" or "mild limitation" in the psychiatric review technique will result in a finding the impairment is non-severe at step two of the sequential evaluation. 20 C.F.R. § 404.1520a(d)(1). Severe impairments that do not meet or medically equal the requirements of a Listing are then assessed in the RFC. 20 C.F.R. § 404.1520a(d)(3). At the RFC phase,  the Commissioner is to consider all medically determinable impairments, even impairments that are not severe. 20 C.F.R. § 404.1545(a)(2) Here, the ALJ concluded Plaintiff suffered mild limitations in several of the functional categories, and that Plaintiff's mental impairments are non-severe. Yet, the ALJ failed to account for these mild limitations in her RFC determination or explain their omission. (AR. at 19.)

In *Hutton v. Astrue*, the Ninth Circuit held an ALJ committed legal error when he

---

no difficulties or delays"; that she "appeared to have no difficulties maintaining concentration and attention"; that she was able to answer questions without needing them repeated; that she exhibited "[n]o behavioral anomalies" (except her evasive responses regarding her history of alcohol use); and that she exhibited "[n]o major functional impairments" in her ability to adapt to change. (AR. at 694-95.)

On August 11, 2017, non-examining psychologist Stephen Fair, Ph.D. (referred by the State's Disability Determination Services to assess Plaintiff's mental impairments at the initial level of review) concluded Plaintiff suffered only "mild" limitations in any functional domain and concluded her mental impairments were non-severe. (AR. at 76.) Dr. Fair relied on his review of Plaintiff's medical records and the consultative examination conducted by Dr. Mastikian. (AR. at 74-76.) On December 6, 2017, at the reconsideration level, state agency psychologist Tawnya Brode, Psy.D., affirmed Dr. Fair's prior conclusions and upheld the finding Plaintiff's mental impairments were non-severe. (AR. at 91-92.)

assigned to the claimant mild limitations in one of the four broad functional areas set forth in 20 C.F.R. § 404.1520a(c)(3), but excluded that impairment from consideration in the RFC. 491 Fed. Appx. 850, 850-51 (9th Cir. 2012) (unpublished) ("To determine Hutton's RFC properly, the ALJ was required to consider Hutton's physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace . . . ."); *see Frary v. Comm'r of Soc. Sec.*, No. 1:20-CV-00260-SAB, 2021 WL 5401495, at *7-19 (E.D. Cal. Nov. 18, 2021) (for extensive discussion of District Courts applying *Hutton*). As discussed  in *Frary*, other district courts have found the ALJ must consider the mild functional limitations resulting from a non-severe mental impairment in her RFC discussion. *Frary*, 2021 WL 5401495, at *10-12 (citing cases).

The *Frary* Court noted that other District Courts have held that a discussion of the evidence related to the non-severe mental impairment in the RFC phase is sufficient in conjunction with an analysis of the impairment at step two.  *See Frary*, 2021 WL 5401495, at *13 (citing *Denney v. Saul*, No. 1:18-CV-00689-GSA, 2019 WL 4076717, at *7–8 (E.D. Cal. Aug. 29, 2019)); *Lindsay v. Berryhill*, No. SACV 17-01545-AFM, 2018 WL 3487167, at *6 (C.D. Cal. July 18, 2018).  Other Courts have distinguished *Hutton* on the basis that, in *Hutton*, the ALJ expressly refused to consider the claimant's PTSD. *McIntosh v. Berryhill*, No. EDCV 17-1654 AGR, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) ("In this case, unlike Hutton, the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity.").  Even in cases finding no error based on *Hutton*, the ALJ still considered some evidence related to Plaintiff's mental impairment beyond step two.  *Frary*, 2021 WL 5401495, at *13-16.[15] More recently, however, the Ninth Circuit concluded the ALJ did not err when she "properly considered the medical evidence and the four areas of mental functioning in the determination that [Plaintiff's] mental impairment is nonsevere, and the medical evidence did not warrant including specific mental functional limitations in the RFC." *Jandrejack v. Saul*, 843 Fed.Appx. 993,

---

[15] The Court in *Frary* did not find reversible error based on *Hutton*. *Id.* at 19.

994-95 (9th Cir. 2021) (unpublished).

Here, the ALJ thoroughly analyzed the Plaintiff's mental health limitations at step two, including an evaluation of her limitations in the aforementioned functional categories, a discussion of opinion evidence regarding Plaintiff's mental health conditions, and a discussion of medical records and Plaintiff's daily activities. (AR. at 16-17.) Despite cursorily noting "[t]he following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis[,]"[16] the ALJ's RFC discussion includes no reference  or discussion of Plaintiff's mild limitations assigned at step two, nor any of the evidence pertaining to her mental health treatment. (AR. at 19-25.) The Court is not satisfied the ALJ adequately considered these limitations in the RFC determination. Consistent with the holding in *Hutton* the ALJ erred by failing to engage in some analysis or provide some explanation, beyond step two, of her decision not to incorporate mild limitations in the RFC. An accounting of the all the mental limitations supported by the record is especially important in cases like this, where the Plaintiff has documented mental impairments and post-stroke residual symptoms (AR. at 430-31, 438-39, 447-48, 873, 1731) and the ALJ concluded, despite this evidence, that Plaintiff can perform skilled past relevant work. *Solomon*¸ 376 F.Supp.3d at 1021. The Court reverses the ALJ on this basis and will remand for further proceedings.

## C.   The ALJ did not err by failing to discuss Plaintiff's work history.

An adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted). The ALJ provided several reasons for discounting Plaintiff's symptom testimony, including lack of support from the objective evidence (AR. at 20), conservative treatment (AR. at 20, 21), daily activities (AR. at 21), improvement

---

[16] The Court acknowledges that other District Courts have considered this statement meaningless boilerplate without sufficient analysis. *E.g.*, *Uranna G. v. Saul*, No. 3:18-CV-02117-RNB, 2019 WL 5342537, at *4 (S.D. Cal. Oct. 21, 2019) (citations omitted).

with treatment (AR at 21), non-compliance with treatment (AR. at 21), and Plaintiff's reported motivation for leaving work. (AR. at 21). Despite this, Plaintiff argues the ALJ erred by failing to explicitly consider Plaintiff's work history. (Pl. Br. at 24-26.) Defendant argues the ALJ did account for Plaintiff's work history by noting Plaintiff's report of having worked 40 years. (AR. at 21.)

The Court finds the ALJ did acknowledge Plaintiff's work record in her discussion of Plaintiff's symptom testimony, in her recognition of Plaintiff's insured status, and in her citation to Plaintiff's Certified Earnings Record at step four. (AR. at 14, 21, 24.) The ALJ also provided several facially sufficient reasons for discrediting Plaintiff's symptom testimony, and Plaintiff does not specifically challenge them, other than asserting without adequate explanation, "[t]he ALJ's credibility assessment is generally defective . . . .[17] *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (finding that arguments that are presented without substantive analysis are waived); *Massimo v. Saul*, 817 F. App'x 411, 413 (9th Cir. 2020) (unpublished) (deeming cursory arguments without substantive analysis waived) (citing *Greenwood*). The Court finds no error in the ALJ's discussion of Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** reversing the decision of the Administrative Law Judge (AR. at 13-30.) and remanding for further proceedings consistent with this opinion.

/ / /

/ / /

/ / /

---

[17] Plaintiff argues that the other two issues briefed are "inextricably intertwined [with Plaintiff's credibility] because they are based on the same facts and judgments." (Pl. Br. at 24.) Plaintiff asserted, "The ALJ's credibility assessment is generally defective because of the above errors [(the first two issues briefed)] and is specifically so because of her failure to consider Plaintiff's strong work history in her assessment." (Pl. Br. at 24.) But an ALJ's consideration of the opinion evidence, the severity of an impairment, and a Plaintiff's symptom testimony are all separate analyses guided by separate rules and legal standards. *Compare* 20 C.F.R. § 404.1529 *with* 20 C.F.R. § 404.1522-1523 *and* 20 C.F.R. 404.1527. Importantly, the Plaintiff does not elucidate how the reasons the ALJ provided are insufficient.

1   **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

2   consistent with this Order and close this case.

3   Dated this 10th day of February, 2022.

4

5

6   _____

    Honorable Diane J. Humetewa

7   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -